UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
WAYNE J. JAMES,                    : 13 Civ. 3859 (GBD) (JCF)
                                   :
            Plaintiff,             :      REPORT AND
                                   :      <u>RECOMMENDATION</u>
                                   :
     - against -                   :
                                   :
CENTRAL CASTING N.Y. and SAG/AFTRA :
ONE UNION,                         :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

     Plaintiff Wayne James, proceeding <u>pro se</u>, seeks to amend his
complaint.  Defendants GEP Cenex, LLC (erroneously sued as Central
Casting N.Y.) and the Screen Actors Guild - American Federation of
Television and Radio Artists One Union ("SAG/AFTRA") separately
oppose the motion.  I recommend denying the motion to amend without
prejudice to the plaintiff filing a further motion to amend the
complaint as to defendant SAG/AFTRA.

<u>Background</u>

     As explained in my prior report and recommendation, Mr. James
alleges that he was employed as a background actor by GEP Cenex
until April 2010, but was not informed that he had been terminated
until October 26, 2011.  (Report and Recommendation dated July 24,
2014 ("July R&R") at 2).  Between December 18, 2012, and April 25,
2013, he attempted to resolve this assertedly unlawful termination

1

with the help of his union, SAG/AFTRA, but received no assistance. (July R&R at 2).  The termination and the alleged failure of the union to represent him form the basis of this action.

After removing the action, which had originally been filed in state court, to this court, SAG/AFTRA answered the complaint; GEP Cenex moved to dismiss.  I recommended granting GEP Cenex's motion but permitting Mr. James to amend the complaint.  (July R&R at 14 & n.4).  Mr. James filed an objection to the July R&R that essentially indicated that he would amend his complaint, and shortly thereafter filed a proposed amended complaint, styled as a motion to amend.  The proposed amended complaint is identical to the original complaint, except that it appends the name "GEP Cenex LLC" to each mention of Central Casting, and adds a final paragraph, which reads:

> Plaintiff claims he is being punished so severely, due to the culture of Racism that is promoted in the television and film industry.  As a man with African American feature[s] Plaintiff has experienced Racism and is familiar with Racist policies and procedures and recognizes that the policies of GEP Cenex LLC and SAG-AFTRA, from their contracts to their constitution do[] not promote a fair or equal opportunity environment for all workers. I Wayne J. James Honestly believe I'm being treated unfairly and am being unreasonably punished because I'm a male of African decent, under the guides [sic] of we can hire and fire who we wish.

(Motion to Amend Complaint ("Proposed Amended Compl."), ¶ 22).

After each of the defendants filed its opposition to the

motion, Mr. James submitted a letter that includes his "detailed accounts" of the defendants' alleged racial discrimination. (Letter of Wayne J. James dated Sept. 15, 2014 ("James Letter") at 2).

Discussion

    A.   Legal Standard

    Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Aetna Casualty & Surety Co. v. Aniero Concrete Co., 404 F.3d 566, 603-04 (2d Cir. 2005). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted). However, motions to amend may be denied for reasons including undue delay, bad faith or dilatory motive, undue prejudice to the non-moving party, and futility. See Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman, 371 U.S. at 182); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

    Both defendants argue that the amendment would be futile. An amendment is futile when the pleading would not survive a motion to dismiss. See AEP Energy Services Gas Holding Co. v. Bank of

America, N.A., 626 F.3d 699, 726 (2d Cir. 2010); Slay v. Target
Corp., No. 11 Civ. 2704, 2011 WL 3278918, at *2 (S.D.N.Y. July 20,
2011) ("Futility generally turns on whether the proposed amended
pleading states a viable claim."); Penn Group, LLC v. Slater, No.
07 Civ. 729, 2007 WL 2020099, at *4 (S.D.N.Y. June 13, 2007) ("[I]f
a proposed new pleading could survive a motion under Federal Rule
of Civil Procedure 12(b)(6), it will not be deemed futile.").
Under this standard, "'[t]he issue is not whether a plaintiff will
ultimately prevail but whether the claimant is entitled to offer
evidence to support the claims.'" Todd v. Exxon Corp., 275 F.3d
191, 198 (2d Cir. 2001) (alteration in original) (quoting Scheuer
v. Rhodes, 416 U.S. 232, 236 (1974)).

    In determining whether an amended complaint would withstand a
motion to dismiss, a court must accept as true all well-pleaded
facts alleged in the complaint and draw all reasonable inferences
in the plaintiff's favor. See Kassner v. 2nd Avenue Delicatessen,
Inc., 496 F.3d 229, 237 (2d Cir. 2007). In ruling on a motion to
dismiss, the court's task "'is merely to assess the legal
feasibility of the complaint, not to assay the weight of the
evidence which might be offered in support thereof.'" GVA Market
Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.,
580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global
Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d

168, 176 (2d Cir. 2004)).  A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). Where a complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of the Federal Rules of Civil Procedure and should be dismissed.  Id. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

   B.   GEP Cenex

   In the July R&R, I examined each of Mr. James' putative claims, keeping in mind that the pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest'" (July R&R at 4 (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)), and found each of the claims insufficiently pled (July R&R at 14).  Mr. James has made a single substantive amendment to his original complaint -- one which can relate only to a claim of employment discrimination on the basis of race.  I therefore adopt the reasoning of the July R&R in finding that the motion to amend should be denied as futile  as to all other claims, and address

only employment discrimination.[1]

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), prohibits discrimination in employment on the basis of race.  "[C]ourts in this Circuit analyze discrimination claims brought under Title VII, the New York Human Rights Law, and the New York City Human Rights Law in the same manner . . . ." Tappe v. Alliance Capital Management, L.P., 198 F. Supp. 2d 368, 372 (S.D.N.Y. 2001).  Although a plaintiff "'need not plead a prima facie case of discrimination'" to survive a motion dismiss, he must allege sufficient facts to show he is entitled to relief.  Rosario v. City of New York, No. 11 Civ. 9008, 2013 WL 782408, at *6 (S.D.N.Y. Jan. 9, 2013) (quoting Bermudez v. City of New York, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011)), report and recommendation adopted, 2013 WL 782581 (S.D.N.Y. March 1, 2013). Courts therefore look to the elements of a prima facie case as "an outline of what is necessary to render a plaintiff's employment

---

[1] GEP Cenex contends that Mr. James "did not assert a cause of action for discrimination against [it] in his original Complaint" and "should not now be permitted to assert a new cause of action against [it]." (Letter of Michael A. Jakowsky dated Sept. 12, 2014 ("GEP Cenex Memo.") at 2 n.1).  The July R&R addressed a possible discrimination claim against GEP Cenex, and found that it was insufficiently pled. (July R&R at 4-6).  That is, I found that the complaint could be fairly read to attempt to state a discrimination claim, but failed in that attempt.  Thus, this is not a new claim, but rather an attempt to plead an old one properly, which is the purpose of granting a plaintiff permission to amend.

discrimination claims . . . plausible." <u>Id.</u> (internal quotation
marks and brackets omitted).   "To state a prima facie case of
discriminatory discharge . . . , a plaintiff must allege that: (1)
he falls within a protected group; (2) he held a position for which
he was qualified; (3) he was discharged; and (4) the discharge
occurred under circumstances giving rise to an inference of
discrimination."  <u>Brown v. Daikin America</u>, 756 F.3d 219, 229 (2d
Cir. 2014) (internal quotation marks omitted).

        Mr. James' proposed amended complaint is insufficient.
Assuming, for the sake of argument, that he has made out the first
three elements, he fails on the fourth.  The new paragraph in the
proposed amended complaint merely recites that a culture of racism
exists in the entertainment industry and that GEP Cenex's "policies
and procedures . . . do[] not promote a fair or equal opportunity
environment for all workers." (Proposed Amended Compl., ¶ 22).  It
does not provide any information from which it could be inferred
that Mr. James was terminated because of discrimination.  Indeed,
the claim is so threadbare that it fails to provide GEP Cenex with
"fair notice of . . . the grounds on which [this claim] rests."[2]

_____

        [2] As GEP Cenex points out (GEP Cenex Memo. at 2 n.1), there is
another reason that any Title VII claim connected with Mr. James'
termination must fail.   Before he can file an action under Title
VII, a claimant in New York must file an administrative complaint
with the Equal Employment Opportunity Commission ("EEOC") or the
New York State Division of Human Rights within 300 days of the

<u>Barrett v. Forest Laboratories, Inc.</u>, __ F. Supp. 2d __, __, 2014 WL 4058683, at *13 (S.D.N.Y. 2014) (internal quotation marks omitted).

    C.  <u>SAG/AFTRA</u>

    SAG/AFTRA did not move to dismiss the original complaint, so the July R&R does not analyze the claims against it in any detail. Mr. James alleges that he paid $2,300 to join SAG in 2011, before its merger with AFTRA,[3] but that the amount should have been refunded to him, because as an existing member of AFTRA, he would not have been required to pay to join SAG after the merger. (Proposed Amended Compl., ¶ 17(1)). He further asserts that SAG/AFTRA failed to support and represent him in his dispute with GEP Cenex. (Proposed Amended Compl., ¶ 17(2)). Finally, he claims that SAG/AFTRA's policies are discriminatory. (Proposed Amended Compl., ¶¶ 17(1b); 22).

    It is unclear on what theory Mr. James seeks to proceed regarding the refund claim. He has not asserted that there was an

---

relevant acts. <u>See</u> <u>Henny v. New York State</u>, 842 F. Supp. 2d 530, 557-58 (S.D.N.Y. 2012). Mr. James has not done so, and, as the termination of which he complains occurred in 2011, it is now too late.

    [3] The two entities merged at the end of March, 2012. <u>See</u> Jonathan Handel, <u>SAG/AFTRA Merger Passes: It's Now SAG-AFTRA</u>, Hollywood Reporter, March 30, 2012, <u>available at</u> www.hollywoodreporter.com/news/sag-aftra-merger-passes-sag-306398.

agreement to refund fees paid to SAG by AFTRA members once the merger took place or pointed to a state or federal law that requires such a refund.  To the extent he seeks to allege that SAG engaged in some kind of fraud because it had a duty to inform him when he paid the fees that "the union had plans of merging" (Proposed Amended Compl., ¶ 17(1)), he has not pled each of the elements of such a claim, see Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) ("Under New York law, the five elements of a fraud claim . . . [are]: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."), either with particularity, as required by the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 9(b), or otherwise.

Similarly, Mr. James has not sufficiently pled a claim that SAG/AFTRA breached its duty of fair representation pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. This duty arises out of "the union's status as exclusive bargaining representative in the collective bargaining process or in the administration of rights under a collective bargaining agreement." Felice v. Sever, 985 F.2d 1221, 1228 (3d Cir. 1993).  Although Mr. James has alleged that he was a member of SAG/AFTRA, he has not alleged that at the time of the incident he complains of he was

employed in a bargaining unit represented by the union.  <u>See</u> <u>id.</u>
(union member not employed in bargaining unit represented by union
has "no duty of fair representation claim against the union based
on [the collective bargaining agreement]"); <u>Karo v. San Diego</u>
<u>Symphony Orchestra Association</u>, 762 F.2d 819, 821 (9th Cir. 1985)
("A union's duty of fair representation [] does not extend to
persons who are not employees in the bargaining unit." (citing
<u>Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.</u>, 404
U.S. 157, 181 n.20 (1971))).  That is, in order to state a claim
against the union, Mr. James must allege that, at the time of his
termination from GEP Cenex, he was employed <u>as a member of</u>
<u>SAG/AFTRA</u>.  Even then, Mr. James could only state a claim if he
could truthfully allege that the union's conduct was "arbitrary,
discriminatory or in bad faith" and that it "seriously undermined
the arbitral process," such as by "fail[ing] to fairly and
adequately pursue an investigation of a grievance."  <u>Gold v. Local</u>
<u>Union No. 888, U.F.C.W., AFL-CIO</u>, 758 F. Supp. 205, 207 (S.D.N.Y.
1991) (internal quotation marks omitted).

   Finally, there are a number of statutes under which Mr. James'
putative discrimination claims might proceed.  It is a violation of
Title VII for a union to discriminate against an individual on the
basis of his membership in a protected class.  42 U.S.C. § 2000e-
2(c)(1); <u>see also</u> <u>Scott v. City of New York Department of</u>

Correction, 641 F. Supp 2d 211, 224-25 (S.D.N.Y. 2009).  But Mr. James did not file a claim with the EEOC or the New York State Division of Human Rights within 300 days of April 25, 2013 (the most recent date on which SAG/AFTRA allegedly engaged in discriminatory conduct (Proposed Amended Compl., ¶ 13)) so, like his Title VII claim against GEP Cenex, such a claim would be barred.  See Henny, 842 F. Supp. 2d at 557-58.

To state claim under 42 U.S.C. § 1981, which protects the rights of all persons to "make and enforce contracts" and enjoy "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," the plaintiff "must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute."[4] Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  "A union, entrusted with the enforcement of a labor contract, may violate § 1981 if it discriminates [by] interfering with its members' ability to enforce their bargaining contract . . . ."  Tadros v.

---

[4] Unlike Title VII, Section 1981 does not have an exhaustion requirement.  See, e.g., Allen v. Trans World Airlines, No. 78 Civ. 4041, 1984 WL 1371, at *1 (S.D.N.Y. Dec. 21, 1984).

Public Employees Federation, No. 94 Civ. 6893, 1996 WL 631705, at
*3 (S.D.N.Y. Oct. 30, 1996) (citing Patterson v. McLean Credit
Union, 491 U.S. 164, 177 (1989); Goodman v. Lukens Steel Co., 482
U.S. 656, 669 (1987); Woods v. Graphic Communications, 925 F.2d
1195, 1202 (9th Cir. 1991)).  But, again, Mr. James has not alleged
that he was covered by a collective bargaining agreement at the
time that he was terminated.

New York law prohibits a union from "exclud[ing] or
expel[ling] from its membership" an individual based on his race.
N.Y. Exec. Law §296(1)(c).  "The standards for recovery under
section 296 of the Executive Law are similar to the federal
standards under [T]itle VII . . . ." Stephenson v. Hotel Employees
& Restaurant Employees Union Local 100 of the AFL-CIO, 6 N.Y.3d
265, 270, 811 N.Y.S.2d 633, 636 (2006).  Just as with the
discrimination claim against GEP Cenex, the claim against SAG/AFTRA
is insufficiently pled.  Mr. James does not allege that he was
excluded or expelled from the union on the basis of his race.[5] He
merely notes a "culture of [r]acism" in the entertainment industry

---

[5] Any claim that implicates the union's duty to represent him
as a member of SAG/AFTRA would be pre-empted by a duty of fair
representation claim.  See, e.g., Eckert v. United Auto Workers,
Local Union 897, No. 04 CV 538S, 2012 WL 638810, at *7 (W.D.N.Y.
Feb. 27, 2012) (holding state law claim relating to union's failure
to pursue grievance pre-empted by section 301 of Labor Management
Relations Act).

which is assertedly reflected in unidentified "policies and procedures" of SAG/AFTRA. (Proposed Amended Compl., ¶ 22).

    D.   <u>Further Amendment</u>

The Second Circuit has held that a <u>pro</u> <u>se</u> litigant should be afforded at least one opportunity to "amend his complaint . . . unless the court can rule out any possibility, however unlikely it might be, that an amended complaint [will] succeed in stating a claim." <u>Gomez v. USAA Federal Savings Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam). I recommend that Mr. James be given the opportunity to amend his complaint as to the claims against SAG/AFTRA, but not as to the claims against GEP Cenex.

As noted above, because SAG/AFTRA did not move to dismiss the original complaint, the July R&R does not discuss the claims against the union in any detail or direct the plaintiff to amend those claims, other than inviting him to "identify the basis for his discrimination claim against SAG/AFTRA." (July R&R at 14 n.4). This report and recommendation, then, includes the first analysis of the legal sufficiency of Mr. James' allegations regarding the union. In light of this discussion, Mr. James might be able to draft a complaint that states one or more claims against the union. Indeed, Mr. James' recent letter (which was filed after the defendants filed their oppositions to the motion to amend), outlines certain incidents that indicate that he might "succeed in

stating a claim." <u>Gomez</u>, 171 F.3d at 796.  For example, he alleges that in 2007, on a film set, a SAG representative denied Mr. James a union waiver,[6] while providing waivers to Caucasian actors (James Letter at 2) and indicates that SAG/AFTRA may have favored Caucasian actors by making it more difficult for non-Caucasian performers to join the union (James Letter at 2-3).  To be sure, these allegations do not yet state a viable claim -- for example, a claim based on the 2007 incident would likely be time-barred, and the facts as stated are too general to give rise to an inference of discrimination; nor do they correct other deficiencies discussed above, such as the failure to allege that Mr. James was employed in a bargaining unit represented by the union.  Nonetheless, Second Circuit precedent counsels in favor of allowing Mr. James a chance to amend his allegations against SAG/AFTRA.  <u>See</u> <u>Gomez</u>, 171 F.3d at 796.

However, Mr. James has already had an opportunity to amend the complaint with respect to his allegations against GEP Cenex.  His recent submission does not indicate that another opportunity will result in his stating a claim against that defendant.  The document

_____

[6] As I understand it, a waiver in this context allows a non-union performer to work under a union contract for a day and receive its benefits for that day of work.  In addition, once a performer has accumulated a certain number of waivers, he can join the union.

contains three allegations mentioning GEP Cenex:

1.  GEP Cenex "interfered" with Mr. James' third-party casting agent's ability to get him bookings. (James Letter at 6).

2.  A representative from GEP Cenex called Mr. James to see if he was available for a booking, and promised to call back. After hours passed with no return call, Mr. James accepted a booking from another agency. GEP Cenex then called back to book him, and he was forced to cancel the other booking. (James Letter at 8).

3.  All persons of influence in GEP Cenex are Caucasian. (James Letter at 8-9).

These additional allegations do not cure the deficiencies of the proposed amended complaint's claims against GEP Cenex.

Conclusion

For the reasons set forth above, I recommend that Mr. James' motion to amend be denied without prejudice to the plaintiff filing a further motion to amend attaching a complaint that adequately pleads one or more of the claims brought against SAG/AFTRA. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of Court, with extra copies delivered to the chambers of the Honorable George B. Daniels, U.S.D.J., Room 1310, and to the chambers of the undersigned, Room 1960, 500 Pearl

Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 7, 2014

Copies mailed this date to:

Wayne J. James
100 Donizetti Pl., Apt. 25-E
Bronx, NY 10475

Jonathan M. Kozack, Esq.
Michael A. Jakowsky, Esq.
Jackson Lewis LLP
One North Broadway
Suite 1502
White Plains, NY 10601

Kate M. Swearengen, Esq.
Peter D. DeChiara, Esq.
Cohen, Weiss and Simon LLP
330 W. 42nd St.
New York, NY 10036